FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 16, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARA L.,[1] | No. 2:19-cv-00032-MKD |
|         Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S |
|    vs. | MOTION FOR SUMMARY |
| | JUDGMENT AND GRANTING |
| ANDREW M. SAUL, | DEFENDANT'S MOTION FOR |
| COMMISSIONER OF SOCIAL | SUMMARY JUDGMENT |
| SECURITY,[2] | |
|         Defendant. | ECF Nos. 15, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

8.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

1    If the severity of the claimant's impairment does not meet or exceed the

2    severity of the enumerated impairments, the Commissioner must pause to assess

3    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4    defined generally as the claimant's ability to perform physical and mental work

5    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6    404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8    RFC, the claimant is capable of performing work that he or she has performed in

9    the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

10    capable of performing past relevant work, the Commissioner must find that the

11    claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

12    performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14    RFC, the claimant is capable of performing other work in the national economy.

15    20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

16    must also consider vocational factors such as the claimant's age, education, and

17    past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

18    adjusting to other work, the Commissioner must find that the claimant is not

19    disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

20

ORDER - 5

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 12, 2015, Plaintiff applied both for Title II disability insurance benefits alleging a disability onset date of February 9, 2015. Tr. 268-69. The application was denied initially, Tr. 123-26, and on reconsideration, Tr. 128-130. Plaintiff appeared before an administrative law judge (ALJ) on September 20, 2017. Tr. 43-94. On January 23, 2018, the ALJ denied Plaintiff's claim. Tr. 13-34.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2020, has not engaged in substantial gainful activity since February 9, 2015. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, migraine headaches and obesity. *Id.*

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20-21. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] must have the option to alternate between sitting and standing at her discretion; she can frequently handle and finger; she can never climb ladders, ropes, or scaffolds; she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she cannot have concentrated exposure to extreme heat or vibration; she can have no exposure to hazards, including unprotected heights and moving mechanical parts; she can tolerate no more than moderate noise; and she cannot operate a motor vehicle.

Tr. 21-22.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a receptionist. Tr. 27. In the alternative, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cashier II, hospital admitting clerk and final assembler. Tr. 28. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of February 9, 2015, though the date of the decision. Tr. 28.

On November 20, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 2-7, making the ALJ's decision the Commissioner's final decision for

ORDER - 7

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).  The Appeals Council's decision was the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; ECF No. 15 at 3.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ improperly weighed the medical opinion of Juan Bala, M.D. and improperly rejected a limitation assessed by Nossa Maya, M.D.  ECF No. 15 at 4-11.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

//

### 1. *Dr. Bala*

In April 2017, Plaintiff's treating physician, Dr. Bala, opined Plaintiff had numerous functional limitations, including that she could lift a maximum of 10 pounds, stand/walk a total of less than two hours and sit for a total of two hours in a day, Tr. 576, she would need to lie down at unpredictable intervals once or twice a week due to her severe migraines, Tr. 577, and that she had postural limitations including an inability to twist, stoop, crouch or climb ladders. Tr. 578. He stated Plaintiff's imaging of her back showed curvature and degeneration, that she has pain, decreased strength and decreased range of motion, which he said supported his opinion, Tr. 578, 580, and that her "arthralgias" are worsened by activity, as "seen by pain management." Tr. 579. He also opined Plaintiff had environmental limitations, such as the need to avoid all exposure to cold, heat, hazards and fumes/odors/dusts, Tr. 579, that she would miss three or more days a month from a job, and she is in severe/extreme pain 100 percent of the time. Tr. 579-81.

The ALJ gave Dr. Bala's opinion little weight. Tr. 26. As Dr. Bala's opinion was contradicted by the opinion of Dr. Maya, Tr. 49-63, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Bala's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Bala's opinion was provided on a check-box form with minimal explanation. Tr. 26. "[A]n ALJ may discredit treating physicians'

opinions that are conclusory, brief, and unsupported by the record as a whole."

*Bray,* 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Hatler*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Dr. Bala opined that Plaintiff had multiple limitations that he failed to provide any explanation for. Where he opined Plaintiff could lift only 10 pounds, he was asked to give a "reason for limitation," but he did not provide any reasoning. Tr. 576. Where he opined Plaintiff needed to shift positions at will, he again gave no reasoning. Tr. 577. Dr. Bala opined Plaintiff had multiple environmental restrictions, but again gave no explanation for the limitations. Tr. 579. This was a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Bala's opinion.

Second, the ALJ reasoned Dr. Bala's opinion was based largely on Plaintiff's self-report. Tr. 26. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9t Cir. 2008). The ALJ must provide the basis for his conclusion that the opinion was more heavily based on a claimant's self-reports than on the objective medical evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, the ALJ reasoned Dr. Bala's infrequent and limited examinations, and the objective evidence as a whole, did not support his opinion and thus the opinion

appeared to be based on self-report. Tr. 26. Dr. Bala opined that Plaintiff needed

to lie down one to two times per week due to migraines. Tr. 577. He stated

Plaintiff's decreased range of motion, pain and imaging provided evidence to

support his opinion. Tr. 579-80. However, Dr. Bala completed the opinion

questionnaire at an appointment with Plaintiff, and his notes from the appointment

include, "States she had a lumbar x-ray . . . showing lordosis. Activity decreased

because of her pain, but also gets worsening migraines. States migraines will lead

to her lying down during her work shift." Tr. 884. Based on this note, and Dr.

Bala's indication that "pain management" saw Plaintiff's pain with activity, Tr.

579, the evidence suggests Dr. Bala did not personally review the imaging nor

personally observe Plaintiff's reported increased pain. The evidence supports a

finding that Dr. Bala's opinion is based on Plaintiff's self-report. As addressed

below, the ALJ provided legally sufficient reasons for finding Plaintiff's subjective

statements unreliable. As such, this was a specific and legitimate reason,

supported by substantial evidence, to reject the opinion.

Third, the ALJ found Dr. Bala's opinion was not supported by his own

limited objective evidence nor the other evidence of record. Tr. 26. An ALJ may

reject a treating physician's opinion that is not supported by the record as a whole.

*Batson*, 359 F.3d at 1195. Moreover, a physician's opinion may be rejected if it is

unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d

871, 875 (9th Cir. 2003). Dr. Bala's records demonstrate Plaintiff generally had normal neurologic and psychiatric exams, Tr. 850, 855, 886, she appeared in no acute distress, Tr. 873, 877, 882, she had normal grip strength and range of motion, Tr. 855, and he generally did not document any musculoskeletal exams, Tr. 850, 855, 873, 877, 882. His records do not document frequent fibromyalgia flares nor frequent migraines. The imaging shows reversal of normal lordosis of the cervical spine but only mild loss of disc height in the cervical and lumbar spine. Tr. 628. This was a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Bala's opinion.

Plaintiff contends that the ALJ erred in giving more weight to a reviewing source's opinion over Dr. Bala's opinion. ECF No. 15 at 4. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184

(9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Here, the ALJ rejected Dr. Bala's opinion for three valid reasons, and the rejection was based on substantial evidence, as discussed above. As such, the ALJ giving greater weight to Dr. Maya's opinion over Dr. Bala's opinion was not an error. As the ALJ properly rejected Dr. Bala's opinion, Plaintiff is not entitled to remand on these grounds.

### 2. Dr. Maya

Plaintiff contends that the ALJ improperly rejected a portion of Dr. Maya's opinion. ECF No. 15 at 10. Plaintiff argues that Dr. Maya opined that Plaintiff has fibromyalgia flares and the RFC provided by Dr. Bala would be appropriate during Plaintiff's flares. *Id.* Plaintiff argues the ALJ failed to include this portion of the opinion in his RFC and did not give a reason for rejecting the limitation. *Id.*

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant]

can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 416.917(a)(1), 404.1527(a)(1). An ALJ is not required to provide clear and convincing reasons for rejecting statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009) (noting that the physician's questionnaire responses only addressed the general relationship between the claimant's condition and potential symptoms and did not address specific extent of claimant's functional limitations); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (deciding that because the physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions").

Here, Dr. Maya opined that Plaintiff is capable of performing light work, with additional limitations. Tr. 51-52. Plaintiff's counsel asked Dr. Maya if it was "possible" that "at times" Dr. Bala's RFC may apply. Tr. 61. Dr. Maya answered, "If she can have severe flare-up of fibromyalgia, yes." *Id.* However, Dr. Maya stated the records do not indicate how severe Plaintiff's condition is, how frequently she missed work, or how frequently she experiences flares. Tr. 62. As such, this portion of Dr. Maya's testimony did not provide any specific limitations

or opinion and the ALJ did not need to provide reasoning for rejecting the statement. Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 15 at 11-17. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81

F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

ORDER - 17

statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 23.

First, the ALJ found Plaintiff's activities of daily living were not consistent with her reported symptoms.  Tr. 23.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

The ALJ reasoned Plaintiff's reported activities were more consistent with the ability to perform a restricted range of light work.  Tr. 23.  The ALJ cited to Plaintiff's reports of performing laundry and cleaning, attending church weekly, exercising daily, maintaining online social contact and enjoying activities like fishing, crafts and pottery.  *Id.*  While the cited activities may not be readily

transferrable to light work, the overall record demonstrates Plaintiff's activities are inconsistent with her reported limitations.

Plaintiff reported she can drive and can shop for three to four hours. Tr. 315, 476. She prepares meals and provides transportation for her children. Tr. 312-13. She has reported exercising and engaging in yoga. Tr. 421, 489, 722. She watches television, talks on the phone, watches movies, has dinner with others and goes for car rides daily. Tr. 313. Plaintiff also reported she can lift up to 20 pounds. Tr. 311.

Plaintiff argues the ALJ improperly considered her statements, including statements regarding her difficulty using her hands to perform tasks around the home, sitting causing pain, and her report that driving triggers migraines. ECF No. 15 at 11. However, Plaintiff's activities summarized above, including meal preparation, engaging in crafts, attending church weekly, performing chores, using the internet, shopping, movie watching, and driving are inconsistent with her reports. These activities require Plaintiff to sit, use her hands and drive on a regular basis. The ALJ permissibly relied on the evidence of Plaintiff's reported activities, in part, to reject her contention that her reported symptoms prevent her from working.

Second, the ALJ found Plaintiff's treatment history is inconsistent with her reported debilitating symptoms. Tr. 23. Evidence of "conservative treatment" is

sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti*, 533 F.3d at 1039 (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

The ALJ noted that Plaintiff 's conditions did not require any "significant forms of treatment" like hospitalization, emergency room visits, nor any other care beyond routine appointments for her fibromyalgia and migraines. Tr. 23. The records demonstrate a lack of emergency care, and more importantly, a lack of care from neurologists and rheumatologists. Plaintiff testified she had difficulty getting in to see a rheumatologist, but there are no rheumatology records from any of the years leading up to Plaintiff's hearing. Tr. 77. There is no indication Plaintiff was ever referred for care from a neurologist, and she treated her migraine symptoms with ice, rest, massage and medications, including Imitrex. Tr. 486, 561, 722. The

ALJ permissibly relied on the evidence of Plaintiff's conservative treatment in rejecting Plaintiff's statements regarding debilitating symptoms of fibromyalgia and migraines.

Third, the ALJ found Plaintiff made inconsistent statements regarding her symptoms and reported medication side effects. Tr. 23. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). Moreover, evidence that the claimant was motivated by secondary gain is sufficient to support an ALJ's rejection of testimony. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the administrative process is a permissible reason to discount the credibility of the claimant's reported symptoms. *Tonapetyan*, 242 F.3d at 1148.

The ALJ noted Plaintiff reported to her providers that she had improvement with medications, and she was able to increase her activity levels and exercise. Tr. 23. She reported a decrease in her pain levels, improved quality of life, and

improved ability to perform chores.  *Id.*  On multiple occasions, she also reported she was not experiencing any side effects.  *Id.*

Plaintiff argues that her symptoms waxed and waned, independent of treatment and that the varying reports did not show inconsistency.  ECF No. 15 at 16.  However, the ALJ summarized a timeline of the evidence, demonstrating improvement over time with treatment.  Tr. 23.  Additional records demonstrate Plaintiff reported improvement in symptoms with medication, heat and exercise, Tr. 629, 637-38, 644, and even reported her improvement in her quality life as 90 percent improvement, Tr. 649.  Records indicate that with treatment, she generally had normal range of motion, Tr. 604, normal strength, Tr. 790, a normal gait, Tr. 647, 806, and minimal evidence of abnormalities on physical exam, Tr. 817-18, 824-25, 830-31.

Plaintiff contends that her statements regarding medication side effects have been consistent.  ECF No. 15 at 15.  However, Plaintiff cites to records that do not demonstrate that Plaintiff reported side effects to providers during the relevant time period.  Tr. 325, 345 (Plaintiff's disability reports); Tr. 448 (record from November of 2013); Tr. 601 (record from April of 2016 indicating "patient denies any side effects" but also says morphine caused constipation, while she tolerated Percocet); Tr. 638 (record from January of 2017 in which Plaintiff reported constipation but no medication side effects).   While Plaintiff reported multiple

side effects in connection to her application for benefits, Plaintiff has generally denied any side effects when talking with her providers. Tr. 485, 601, 611, 788, 803, 809, 815, 828. The ALJ permissibly relied on the evidence demonstrating inconsistencies in Plaintiff's statements as a reason to reject Plaintiff's report that she had debilitating symptoms that were not responsive to treatment.

Lastly, the ALJ found the objective evidence is inconsistent with Plaintiff's reports. Tr. 23-25. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins,* 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

While Plaintiff's symptoms waxed and waned, the ALJ's finding that the relatively benign objective findings and the imaging were out of proportion with and did not corroborate Plaintiff's report of severe restrictions with exertional and postural activities is reasonable. Plaintiff argues the ALJ did not properly consider her reports that she has migraines that can last up to three days and prevent her from engaging in activities. ECF No. 15 at 16-17. However, the ALJ reasonably

relied on evidence demonstrating Plaintiff had only two documented fibromyalgia flares during the relevant period, and minimal documentation of her reported migraines.  Tr. 24.  Records demonstrate numerous appointments where Plaintiff reported she was not experiencing headaches, where she reported only "mild" headaches, and where she reported improvement with medication.  Tr. 388, 429, 509, 558.  While Plaintiff has reported difficulty using her hands, the ALJ noted Plaintiff has normal grip strength.  Tr. 25.

On this record, the ALJ reasonably concluded that Plaintiff's reports were not supported by her conservative treatment, improvement with treatment, inconsistent statements, nor the objective evidence.  These findings are supported by substantial evidence and are clear and convincing reasons to discount Plaintiff's symptoms complaints.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

ORDER - 24

3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 16, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 25